<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| **SHAHANARA CHOWDHURY,** | : | |
| | : | |
| | : | |
| **Plaintiff,** | : | **Civ. No. 19-21308 (ES) (MAH)** |
| | : | |
| | : | |
| **v.** | : | |
| | : | |
| **MESA LABORATORIES, INC. and** | : | |
| **SHAUNA NEELY,** | : | |
| | : | **REPORT AND RECOMMENDATION** |
| | : | |
| **Defendants.** | : | |
| | : | |

I.    **INTRODUCTION**

This matter comes before the Court by way of Plaintiff Shahanara Chowdhury's Motion to Remand pursuant to 28 U.S.C. § 1447(c). The Honorable Esther Salas, U.S.D.J., referred this motion to the Undersigned for a Report and Recommendation. *See* Local Civ. R. 72.1(a)(2). The Undersigned has considered the matter without oral argument. *See* Local Civ. R. 78.1(b). For the reasons set forth herein, the Undersigned respectfully recommends that Plaintiff's motion be granted.

II.    **BACKGROUND**

This civil action arises from alleged disability discrimination and retaliation in the workplace.[1] *See* Notice of Removal, Ex. A ¶¶ 34-62, Dec. 12, 2019, D.E. 1-1 (hereinafter "Compl."). Plaintiff, a resident of New Jersey, worked for Defendant Mesa Laboratories, Inc.

---

[1] The Court assumes as true the factual allegations in the complaint. *See Batoff v. State Farm Ins. Co.,* 977 F.2d 848, 851-52 (3d Cir. 1992).

1

("Mesa"), a Colorado corporation with its principal place of business in Colorado, from July 2015 until she was terminated on April 2, 2019.  *Id.* ¶¶ 1, 2, 4.  Plaintiff was diagnosed with anxiety in 2017, and with the assistance of medication, she was able to continue her work at Mesa without incident.  *Id.* ¶¶ 8-9.  Plaintiff's anxiety worsened over time, resulting in severe panic attacks in 2018; one such attack required a one-day hospitalization in December 2018.  *Id.* ¶¶ 10, 15.

Plaintiff's immediate supervisor, non-party Sally Boyd, told Plaintiff that she needed to "work through" her anxiety.  *Id.* ¶ 12.  Plaintiff also had an interaction with Defendant Shauna Neely, the Senior Customer Services Representative and Assistant for Human Resources, during one of her panic attacks.  *Id.* ¶¶ 3, 14.  Although Neely tried to console her, Plaintiff "could not stop crying."  *Id.* ¶ 13.  Plaintiff thereafter took an approved Family Medical Leave Act ("FMLA") leave of absence from December 3, 2018 until February 13, 2019.  *Id.* ¶¶ 16, 19.  After about one week back on the job, Mesa placed Plaintiff on a Performance Improvement Plan ("PIP"), citing performance deficiencies; Plaintiff continued to work and was never told that she failed to meet the Plan's requirements.  *Id.* ¶¶ 20-22.  Toward the end of March 2019, Mesa hired a replacement for Plaintiff's role, and on April 2, 2019, terminated Plaintiff.  *Id.* ¶¶ 29-30.  Mesa informed Plaintiff that she was unable to perform the essential functions of the position and that she should have worked through her medical issues.  *Id.* ¶¶ 30-31.

On November 11, 2019, Plaintiff filed a civil action in the Superior Court of New Jersey, Law Division, alleging the following violations of the New Jersey Law Against Discrimination ("LAD")[2]:  (1) disability discrimination, (2) failure to accommodate, (3) retaliation, and (4) individual aiding and abetting.  *Id.* ¶¶ 34-62.  Plaintiff argues that the PIP was a pretext to impermissible discrimination, *id.* ¶¶ 33, 39, and that she was in fact terminated due to her disability

---

[2] N.J. Stat. Ann. §10:5-1 *et seq.*

and medical leave, *id.* ¶¶ 38, 51-53.  Plaintiff further alleges that Mesa failed to reasonably accommodate her disability.  *Id.* ¶¶ 45-46.  Finally, Plaintiff avers that Neely is subject to liability under LAD due to her aiding and abetting of Mesa's unlawful actions.  *Id.* ¶¶ 57-62.

Defendants timely removed this action to the United States District Court for the District of New Jersey on the basis of jurisdiction conferred by 28 U.S.C. § 1332(a).  Notice of Removal, ¶¶ 1-11, Dec. 12, 2019, D.E. 1.  Defendants claim that, due to the extensive damages sought, the amount in controversy exceeds the required threshold.  *Id.* ¶ 7.  As for the diversity of citizenship requirement, Defendants contend that complete diversity exists because Plaintiff fraudulently joined Neely as a party to prevent removal.  *Id.* ¶¶ 5, 8.

Plaintiff has now moved to remand this action back to the Superior Court of New Jersey, Law Division.  *See* Mot. to Remand, Dec. 23, 2019, D.E. 5.  Plaintiff submits that Neely is a proper party to this lawsuit, and therefore, subject matter jurisdiction is lacking.  *See* Pl.'s Br. in Supp. of Mot. to Remand, Dec. 23, 2019, D.E. 5-1.  Defendants have opposed Plaintiff's motion to remand by way of a cross-motion to dismiss the claims against Neely.  *See* Defs.' Mem. of Law in Opp. to Pl.'s Mot. to Remand and in Supp. of Defs.' Cross-Mot. to Dismiss at 1, Jan. 2, 2020, D.E. 7-1.  Defendants therein reiterate that Plaintiff fraudulently joined Neely as a party and further assert that Plaintiff has failed to state a claim against Neely pursuant to Rule 12(b)(6).

In further support of Defendants' cross-motion, Neely submitted a Certification wherein she states that she is "a senior customer service representative and human resources liaison" whose primary responsibilities include serving as the "middle man" between the New Jersey employees and Mesa's Human Resources Department in Colorado.  Cert. of Shauna Neely ¶ 2, Jan. 2, 2020, D.E. 7-3.  Neely further attests she tried to console Plaintiff when Plaintiff came to her office, and that she "played no role" in Mesa's subsequent termination decision.  *Id.* ¶¶ 3-4.

III.    ANALYSIS[3]

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."  28 U.S.C. § 1441(a).  "Where a complaint does not raise a question of federal law, a district court may properly exercise subject matter jurisdiction only if the amount in controversy exceeds the value of $75,000 and diversity exists among the adverse parties."  *In re Benicar (Olmesartan) Prods. Liab. Litig.*, 198 F. Supp. 3d 385, 386 (D.N.J. 2016) (citing 28 U.S.C. § 1332(a)).  Once a case has been removed, the district court shall remand the matter "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction."  28 U.S.C. § 1447(c).

As a general rule, federal courts strictly construe removal statutes to avoid an unintended enlargement of their jurisdiction.  *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938) ("The intent of Congress drastically to restrict federal jurisdiction between citizens of different states has always been rigorously enforced by the courts."); *Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA*, 779 F.3d 214, 218 (3d Cir. 2015) ("The federal removal statute, 28 U.S.C. § 1441, is strictly construed, requiring remand if any doubt exists over whether removal was proper.").  "The party asserting jurisdiction bears the burden of showing that at all stages of the litigation the case is properly before the federal court."  *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004).

"The doctrine of fraudulent joinder represents an exception to the requirement that removal be predicated solely upon complete diversity."  *In re Briscoe*, 448 F.3d 201, 215-16 (3d Cir. 2006).  That said, "[t]he removing party bears a 'heavy burden of persuasion' towards showing that a non-

---

[3] A motion to remand is dispositive.  *See In re U.S. Healthcare*, 159 F.3d 142, 146 (3d Cir. 1998).  Accordingly, the Court addresses Plaintiff's motion via Report and Recommendation.

diverse party was fraudulently joined." *Mersmann v. Cont'l Airlines*, 335 F. Supp. 2d 544, 547 (D.N.J. 2004) (quoting *Batoff*, 977 F.2d at 851). "Joinder is fraudulent where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendants or seek a joint judgment." *Brown v. Jevic*, 575 F.3d 322, 326 (3d Cir. 2009) (quoting *In re Briscoe*, 448 F.3d at 217). A claim is "colorable" when it is not "wholly insubstantial and frivolous." *Batoff*, 977 F.2d at 852. In other words, "[i]f there is even a *possibility* that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court . . . ." *Brown*, 575 F.3d at 326 (quoting *Batoff*, 977 F.2d at 851) (emphasis added).

In making that determination, the Court "must resolve all contested issues of substantive fact in favor of the plaintiff and must resolve any uncertainties as to the current state of controlling substantive law in favor of the plaintiff." *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990). Although the Undersigned may consider limited "reliable evidence that the defendant may proffer to support the removal," the Court must be cautious not to wade into an analysis of the merits of Plaintiff's claims. *In re Briscoe*, 448 F.3d at 220 (stating that the Court may consider evidence of when a claim accrued for statute of limitations purposes "or other relevant matters that are properly subject to judicial notice").

Accordingly, "the fraudulent joinder inquiry is *not* a Rule 12(b)(6) inquiry." *Perry v. ADT LLC*, No. 17-6676, 2018 WL 1221161, at *3 (D.N.J. Mar. 8, 2018) (quoting *Briganti v. HMS Host Int'l*, No. 14–4813, 2015 WL 1268300, at *4 (D.N.J. Mar. 16, 2015)) (emphasis in original). The Undersigned's task is merely to review the factual allegations of the Complaint and applicable legal principles to determine whether Plaintiff's claims against Neely are so "wholly insubstantial

and frivolous" such that Mesa may properly invoke the subject matter jurisdiction of this Court. *Batoff*, 977 F.2d at 852; *see also Perry*, 2018 WL 1221161, at *3-4 (emphasizing the "liberality required for this jurisdictional analysis" and that the "Court's task is to decide whether a cause of action exists, because to inquire any further into the legal merits would be inappropriate in a preliminary jurisdictional determination" (internal quotation marks omitted)).

The LAD is the source of law for the four causes of action alleged in this employment discrimination matter. The LAD "is a 'remedial' statute, containing 'broad language' to be used 'as a mechanism to root out the cancer of discrimination.'" *Nuness v. Simon and Schuster, Inc.*, 325 F. Supp. 3d 535, 545 (D.N.J. 2018) (quoting *Cicchetti v. Morris Cty. Sheriff's Office*, 947 A.2d 626, 641 (N.J. 2008)). The LAD declares it to be an unlawful employment practice for an employer to discharge or otherwise discriminate against an individual on the basis of that individual's disability. *See* N.J. Stat. Ann. § 10:5-12a; *Royster v. N.J. State Police*, 152 A.3d 900, 911 (N.J. 2017) (noting that the LAD was "enacted to protect the rights of those with disabilities, and to enable them to vindicate those rights in court"). Although the LAD does not expressly address an employer's failure to accommodate an employee's disability, New Jersey courts "have uniformly held that the [LAD] nevertheless requires an employer to reasonably accommodate an employee's handicap." *Caraballo v. City of Jersey City Police Dep't*, 204 A.3d 254, 261 (N.J. 2019) (alteration in original) (quoting *Royster*, 152 A.3d at 910). The LAD further proscribes various forms of retaliation in conjunction with an individual's exercise of an activity protected by the statute. *See* N.J. Stat. Ann. § 10:5-12d.

Individual liability for the commission of an unlawful employment practice "can only arise through the 'aiding and abetting' mechanism that applies to 'any person.'" *Cicchetti*, 947 A.2d at 645. That statutory provision prescribes that it is unlawful "[f]or any person, whether or not an

6

employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts

forbidden [under the LAD] . . . ." N.J. Stat. Ann. § 10:5-12e.

> [I]n order to hold an employee liable as an aider or abettor, a plaintiff must show that (1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation.

*Cicchetti*, 947 A.2d at 645 (quoting *Tarr v. Ciasulli*, 853 A.2d 921, 929 (N.J. 2004)); *see also*

*Hurley v. Atlantic City Police Dep't*, 174 F.3d 95, 127 (3d Cir. 1999)).

Courts have interpreted the LAD's aiding-or-abetting provision to impose liability only on

those individuals with supervisory roles. *See Hurley*, 174 F.3d at 129 (predicting that New Jersey

courts would impose aiding and abetting liability only on supervisory employees); *Ivan v. Cty. of*

*Middlesex*, 595 F. Supp. 2d 425, 462 (D.N.J. 2009) ("The LAD does not impose individual liability

upon non-supervisory employees, but a supervisor may be liable for aiding and abetting his or her

own conduct." (internal citations omitted)); *Herman v. Coastal Corp.*, 791 A.2d 238, 253 (N.J.

Super. Ct. App. Div. 2002) ("In addition to determining whether the employee can be held

individually liable for his acts of sexual discrimination and harassment that individual to be liable

would have to hold a position of supervisor.").

Whether an individual qualifies as a supervisor under the LAD is a fact-sensitive inquiry.

*See Aguas v. State of N.J.*, 107 A.3d 1250, 1269 (N.J. 2015).  In the context of hostile work

environment claims under the LAD, the New Jersey Supreme Court eschewed the United States

Supreme Court's definition of a "supervisor" under Title VII in favor of the Equal Employment

Opportunity Commission's ("EEOC") broader definition.  *Id.* at 1271.  The *Aguas* Court held that

a supervisor is "defined more expansively to include not only employees granted the authority to

make tangible employment decisions, but also those placed in charge of the complainant's daily work activities." *Id.*; *accord Griffin v. City of East Orange*, 139 A.3d 16, 25 n.2 (N.J. 2016). That definition "prompts employers to focus attention not only on an elite group of decision-makers at the pinnacle of the organization, but on all employees granted the authority to direct the day-to-day responsibilities of subordinates, and to ensure that those employees are carefully selected and thoroughly trained." *Aguas*, 107 A.3d at 1272.

Courts within this district have been careful to avoid resolving the fact-specific question of whether an employee exercised a supervisory role on a motion to remand on the grounds that such a determination would involve credibility determinations or reaching the merits.

In *Freichs v. Lifestar Response Corporation*, No. 09-4460, 2009 WL 3754190, at *1-3 (D.N.J. Nov. 5, 2009), the district court granted the plaintiff's motion to remand on the basis that the plaintiff had stated colorable LAD claims against the CEO of her former employer—notwithstanding the threadbare allegations set forth in the complaint. The plaintiff alleged that she was terminated due to the fact that she suffered from various medical issues. *Id.* However, her complaint neither identified the specific disabilities nor "include[d] details relating to why she believes her termination was discriminatory." *Id.* In opposition to the plaintiff's motion to remand, the defendants stressed that the complaint did not contain any specific allegations tying the CEO to the alleged discrimination. *Id.* In further support of that contention, the CEO drafted an affidavit in which he attested that he did not participate in the plaintiff's termination. *Id.*

In holding that remand was proper, the district court stressed that its "role in assessing the pending motion is not to rule on the substantive merits of Plaintiff's legal claims or veracity of the facts asserted in her Complaint." *Id.* at 1, n.3. The district court thus disregarded the CEO's affidavit on the basis that it was "an attempt to dispute the facts alleged in the Complaint, and does

not include any concrete documentation showing conclusively that those claims could not be truthful." *Id.* As for the substance of the complaint, the district court agreed with the defendants that the complaint "is sparse—perhaps so much so that she may have failed to state a cognizable claim against any Defendant under the federal pleading standard." *Id.* at 3. The court nonetheless held that the complaint stated a colorable claim based on the allegations that the CEO was the plaintiff's "'direct employer,' thus implying that she was either terminated on his authority or he was responsible for communicating with company decision-makers regarding her disability and eventual firing." *Id.* at 3.

Similar conclusions were reached in *Perry v. ADT LLC*, No. 2017-6676, 2018 WL 1221172, at *3-4 (D.N.J. Jan. 8, 2018), *report and recommendation adopted by*, 2018 WL 1221161 (D.N.J. Mar. 8, 2018). The plaintiff, a residential sales representative, filed race and gender discrimination claims against her employer and several individual employees. *Perry*, 2018 WL 1221172, at *1. In addition to bringing claims against her direct supervisor, the plaintiff also brought claims against the "Team Leader of the Residential Sales Team." *Id.* The defendants removed the action on the basis that the plaintiff fraudulently joined certain non-diverse defendants. *Id.* at *2. The plaintiff subsequently moved to remand the action on the basis that the team leader could be held individually liable under the LAD as her supervisor. *Id.* at *3.

The District Court affirmed the Undersigned's recommendation that the matter be remanded to state court. *See Perry*, 2018 WL 1221161, at *4. The Court emphasized that the plaintiff did not allege that she had only one supervisor, "which plainly leaves open the possibility that [the plaintiff] had other supervisors for purposes of the [LAD]." *Id.* at *3 (citing *Aguas*, 107 A.3d at 1253). As to the parties' respective job positions, the Court distinguished the plaintiff's role as a residential sales representative from the team leader role, noting that the team leader was

allegedly able to make inappropriate remarks and gestures in front of others. *Id.* The Court thus concluded that, "[a]s inviting as Defendant ADT's position may appear at first blush, it ignores that 'the fraudulent joinder inquiry is *not* a Rule 12(b)(6) inquiry.'" *Id.* (quoting *Briganti*, 2015 WL 1268300, at *4). Accordingly, the Court held that the plaintiff asserted a colorable claim against the team leader and remanded the action. *Id.* at *4.

Here, the Undersigned finds that, although the allegations in the Complaint as to Neely are sparse, Plaintiff's claims against Neely rise above the level of "wholly insubstantial and frivolous." *Batoff*, 977 F.2d at 852. After resolving all issues of fact in Plaintiff's favor, as this Court must, the Undersigned concludes that Plaintiff has presented at least a colorable claim for holding Neely liable under the LAD as a supervisor. The relevant allegations are as follows. Neely occupied a senior position within Human Resources and consoled Plaintiff during a panic attack prior to her medical leave. *See* Compl. ¶¶ 13-17, 58. During her leave, Mesa posted her position for hire. *Id.* ¶ 18. On her return to work, Mesa immediately cited her for deficient job performance and requested documentation regarding her condition. *Id.* ¶¶ 19-28. Mesa shortly thereafter terminated Plaintiff on the basis that "she should have been able to work through her medical issues." *Id.* ¶ 30. Plaintiff alleges that she "was not provided any notice that she was purportedly deficient between the PIP and her termination." *Id.* ¶ 32. According to Plaintiff, Neely, as Mesa's Senior Customer Service Representative and Assistant for Human Resources, gave substantial assistance to Mesa or encouraged Mesa's decision. *See id.* ¶¶ 58-59; Pl.'s Br. at 5-6.

In short, Plaintiff alleges that she met with Neely in the midst of a panic attack and that, shortly following her leave, she was terminated on the basis that she should have worked through her condition. *See* Compl. ¶¶ 13, 30. Based on those allegations, a state court may find that Plaintiff sought out Neely given her seniority within Human Resources and that Neely was on

notice of Plaintiff's disability and participated in the decision to terminate Plaintiff.[4]  *See In re Briscoe*, 448 F.3d at 219 (reiterating that the fraudulent joinder inquiry mandates that the "district court must rule out any possibility that a state court would entertain the cause before holding that joinder of a non-diverse defendant was fraudulent"); *Perry*, 2018 WL 1221161, at *4 (emphasizing the "liberality required for this jurisdictional analysis"); *Melendez v. Colorite Plastics Co.*, No. 15–1931, 2015 WL 6745841, at *6 (D.N.J. Oct. 19, 2015) ("While the facts alleged in the Complaint as to [the non-diverse defendant] are indeed sparse and conclusory, the Court is not permitted in assessing fraudulent joinder to conduct a Rule 12(b)(6)-type analysis under federal pleading standards []especially considering the Complaint was filed in state court under state court pleading standards[].") *report and recommendation adopted by*, 2015 WL 6755277 (D.N.J. Nov. 4, 2015).  Stated conversely, nothing in the Complaint precludes the Undersigned from concluding

---

[4]  The Undersigned finds Defendants' reliance on *Sussman v. Capital One, N.A.*, No. 14-1945, 2014 WL 5437079 (D.N.J. Oct. 24, 2014) to be unpersuasive.  While on a medical leave for a physical condition, the plaintiff was diagnosed with depression and anxiety.  *See id.* at *1.  About a week prior to the plaintiff's return to work, he was notified that his position was no longer available. *Id.*  After the plaintiff failed to secure a new position, his employer terminated him.  *Id.*  The plaintiff filed suit against his employer, alleging that the termination, failure to hire, and failure to accommodate amounted to disability discrimination under the LAD.  *Id.* at *5.  Following removal of the action, the plaintiff amended his complaint as of right to join his supervisor and three other non-diverse individual defendants.  *Id.*  In addition to being skeptical of the timing of the amendment, the district court held that the plaintiff fraudulently joined his supervisor because the sole allegation directed against him was that he had knowledge of the plaintiff's situation; specifically, that the plaintiff's condition was disclosed to his supervisor in connection with claim for disability benefits while on leave.  *Id.* at *6; *see also Sussman v. Capital One, N.A.*, No. 14-1945, 2015 WL 164095, at *4 (D.N.J. Jan. 13, 2015) (denying motion to reconsideration and emphasizing that the Court previously "found that the timing of Plaintiff's amendment, Plaintiff's case information statement indicating no intention to add defendants, and the conclusory nature of Plaintiff's allegations creates the inference that the purpose of the amendment was to defeat federal jurisdiction").  Here, on the other hand, Plaintiff alleges that she met with Neely during one of her panic attacks, and that Mesa subsequently failed to accommodate her disability.  *See* Compl. ¶¶ 10, 13, 30.  Given the temporal nexus between the meeting with Neely and Plaintiff's termination for failing to work through her condition, it is possible that a state court may conclude that Neely contributed to the termination decision.

that a state court may find that Neely, as a senior human resources officer, encouraged Mesa to not extend Plaintiff a reasonable accommodation upon her return to work. *Cf. Hogan v. Raymond Corp.*, 538 F. App'x 207, 210 (3d Cir. 2013) (holding that the non-diverse defendant was fraudulently joined because the personal injury claims at issue were "barred beyond question" by the exclusivity provision of the state workers' compensation act).

Discovery will ultimately reveal whether Neely had sufficient authority to effect Plaintiff's employment status, as well as whether Neely had any input into relevant decisions. *See Aguas*, 107 A.3d at 1270 ("An individual whose job responsibilities include the authority to recommend tangible job decisions affecting an employee qualifies as his or her supervisor even if the individual does not have the final say." (quoting EEOC, No. 915.002 *Enforcement Guidance on Vicarious Liability for Unlawful Harassment by Supervisors* 4 (June 18, 1999) ("EEOC Guidance")). As for the representations set forth in Neely's Certification regarding her role as a liaison for the Human Resources staff in Colorado, the Undersigned accords those statements no weight in the absence of documentation that may be considered at this juncture of the case. *See Boyer*, 913 F.2d at 108 (holding that the court could not pierce the pleadings to review the terms of a release in the relevant contract because that defense went to the merits of the plaintiff's claim); *Freichs*, 2009 WL 3754190, at *1 n.3 (rejecting the CEO's affidavit as an uncorroborated "attempt to dispute the facts alleged in the Complaint"). In any event, a liaison role would not automatically foreclose liability if the Colorado staff gave substantial weight to Neely's recommendations. *See Aguas*, 107 A.3d at 1270 ("[A] tangible employment decision may be subject to review by higher level supervisors. As long as the individual's recommendation is given substantial weight by the final decision maker(s), that individual meets the definition of supervisor." (quoting EEOC Guidance at 4)).

Defendants' failure to demonstrate fraudulent joinder does not preclude Defendants from later filing a motion to dismiss for failure to state a claim upon which relief may be granted.  *See Batoff*, 977 F.2d at 853).  It is for the state court on remand whether Plaintiff satisfactorily pleaded an aiding-and-abetting claim under New Jersey law.[5]

## IV.    CONCLUSION

For the reasons set forth above, the Undersigned respectfully recommends the District Court grant Plaintiff's Motion to Remand. The parties have fourteen days to file and serve objections to this Report and Recommendation.  *See* 28 U.S.C. § 636; L. Civ. R. 72.1(c)(2).

**Dated: February 20, 2020**

*s/ Michael A. Hammer*
**United States Magistrate Judge**

---

[5] To the extent either party seeks attorneys' fees and costs in conjunction with this motion, the Undersigned respectfully recommends the District Court deny such requests.  Fees and costs are usually awarded "only where the removing party lacked an objectively reasonable basis for seeking removal."  *Costa v. Verizon New Jersey Inc.*, 936 F. Supp. 2d 455, 467 (D.N.J. 2013) (quoting *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005)).  For the reasons set forth above, the Undersigned concludes that this case does not meet that standard.